UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    v.

JOSHUA VANDERVOORT,

    Defendant

DEFENDANT'S SENTENCING STATEMENT
& REQUEST FOR A NON-GUIDELINE
SENTENCE


Case 6:21-cr-06128-CJS

---

PLEASE TAKE NOTICE, the defendant, Joshua Vandervoort, and his attorney, Brian DeCarolis, have fully reviewed the Presentence Investigation Report (PSR) dated November 1, 2021. The defendant waived indictment and pled guilty to a one-count felony information charging Possession of Child Pornography Involving Prepubscent Minors in violation of 18 U.S.C. 2252A(a)(5)(B) and 2252A(b)(2). The Defendant has no objection to the calculations as laid out in the PSR; specifically the calculation of a total offense level of 27 and a criminal history category of 1. The representations made in this Sentencing Memorandum are based upon the PSR, Mr. Vandervoort and the following exhibits:

    Exhibit A:    Written Statement of Josh Vandervoort

    Exhibit B:    Character Reference Letters written on behalf of Josh Vandervoort by the following people:

        1. Tyler Vandervoort, Josh's son

        2. Nanette Keller, Josh's grandmother

        3. Kathryn Markakis, MD, Josh's grandparent's doctor

        4. Debra Salamone, Josh's girlfriend

        5. William Perez, Josh's co-worker

        6. Stephen Schilling, Josh's co-worker

Exhibit C:    Evaluation Summary of Carl Christensen, North Coast Counseling

Exhibit D:    Certificate and Letter from Kelsey Duell, Livingston County Jail

<u>Relevant Facts</u>

1.    Mr. Vandervoort is a 39 year old single male with a limited criminal history. His only previous adult conviction was for a misdemeanor offense 8 years ago for which he was sentenced to probation. Notably, Mr. Vandervoort was recommended for early termination by his probation officer and such termination was granted by the Presiding Judge. Prior to his incarceration upon his plea of guilty on September 14, 2021 he working for the U.S. Dept. of Agriculture as a Plant Protection and Quarantine Officer. Mr. Vandervoort is a lifelong resident of the Rochester area and resided in Greece with his 21 year old son Tyler. Mr. Vandervoort has had sole custody of his son Tyler since Tyler was 5 years old. Sadly, Tyler's mother has not been involved his life in any meaningful throughout the course of his life. He has been raised and provided for almost exclusively by his father. Sadly, Tyler has suffered from a serious drug addiction since he was 15 years old. Mr. Vandervoort has been Tyler's single biggest supporter and advocate throughout his six year battle with addiction. In addition to being the main provider and support system for his son he has also served in a similar role for his maternal grandparents, Robert and Nanette Keller. They are 91 and 94 years old and as is common of that age cannot fully rely on themselves for life's everyday needs. Mr. Vandervoort has provided them with the indispensable assistance necessary to live their lives in the manner they do.

2.    A search warrant was executed at Mr. Vandervoort's home on March 2, 2021 that resulted in the seizure of electronics and other materials from his home. By May 5, 2021 the government had fully investigated the matter and forensically analyzed the seized computer and found evidence of child pornography and indicated they would be pursuing a case. However, the government did not take the usual step of arresting and charging Mr. Vandervoort with a crime at that time. Rather, being fully aware of the nature of the case as well as Mr. Vandervoort's background they permitted him to remain uncharged and at liberty while

negotiations of a resolution commenced. Ultimately, such a resolution was agreed to between the government and Mr. Vandervoort that resulted in him appearing in Federal Court on September 14, 2021 and entering a plea. During the intervening time between the execution of the search warrant on March 2 and his plea more than 6 months later on September 14, Mr. Vandervoort continued to work for the Department of Agriculture, continued to care for his son and his grandparents, and obtained an evaluation by Carl Christensen from North Coast Counseling.

3.     Mr. Vandervoort made his first appearance court on September 14, 2021 and entered a plea before the Honorable Charles Siragusa. Mr. Vandervoort was remanded to custody at that time and has been housed in the Livingston County Jail since that date. While at the Livingston County Jail Mr. Vandervoort engaged in a Cognitive Behavioral Intervention Class that allowed him to both reflect on his decision making in the past as well as making positive changes in his life moving forward.

<u>Preliminary Comments</u>

4.     The sentencing guideline range for Possession of Child Pornography is among the most serious and opinions on the federal guideline range in these types of cases is lively. The harshness of sentencing in child pornography cases was addressed by the Second Circuit in <u>United States v. Dorvee</u>, 604 F. 3d 84 (2d Cir. 2010), and several subsequent decisions.

5.     Congress has repeatedly increased the guideline range for possession of child pornography cases since 1991. The conduct in this case, were it to have been committed in 1991 under 2G2.4 would likely have been a base level offense of 10, a two-step increase for pre-pubescent minor and a two-level reduction for acceptance of responsibility, with a final guideline range of 6 - 12 months. Since then, Congress has continued to impose sentencing enhancements, that are applicable in virtually every case, including number of images, use of a computer, distribution, and sadistic content. Now, the same conduct produces guideline ranges that are often more than ten times what they used to be.

6.    In February 2013, the sentencing commission released a report to congress indicating that the sentencing guidelines for possession of child pornography is outdated. See U.S Sentencing Commission Report to Congress: Federal Child Pornography Offenses (2012) [Child Porn Report]. The commission indicated that the widespread use of the internet and the type and quantity of the images has made enhancements widespread, which is inappropriate. Id, at 209, 323. The commission also indicated that the type of material that is largely available would qualify for nearly all enhancements. Id, at 84-92. Overall, the Commission Report suggests that the base level offense and typical enhancements can lead to unreasonably harsh sentences.

A Sentence Outside the Guidelines Range

7.    Mr. Vandervoort should be granted a reduction in sentence and be sentenced outside the guidelines range. Paragraph 16 of the plea agreement states, "The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range." This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action." Therefore, departure is permissible under Mr. Vandervoort's plea agreement. It is important to highlight that the Government seemingly had sufficient evidence to charge Mr. Vandervoort with receipt and distribution of child pornography but elected not to. As we know, such a charge would have carried a mandatory minimum of five years in prison. Had the Government felt that justice in Mr. Vandervoort's case required a sentence of at least five years in prison it reasons that they would have gone forward with such a charge. Rather, the Government permitted a plea to a charge without a mandatory minimum and that reserved the right to argue outside the guidelines range.

8.    There are policy and personal factors and that warrant a downward departure in this case. There is "essentially no limit to the number of factors that may warrant a departure" Koon v. United States, 518 U.S. 81, 106 (1996). Furthermore, 18 USC 3553 (a) articulates the

factors that should be considered in sentencing. The law further states that the court shall impose a sentence sufficient, but not greater than necessary. Each sentencing factor of 3553 suggests a reduction outside the guidelines is appropriate in this case. In addition, a review of the sentence of each similarly placed defendant in the United States, the Second Circuit, and the Western District of New York shows that downward departure is the overwhelming norm.

<u>Nature and Circumstances of the Offense and the History and</u>

<u>Characteristics of the Defendant</u>

9.    Prior to this offense, Mr. Vandervoort had limited previous contact with the criminal justice system in his 39 years of life. His only prior adult conviction was eight years ago to a misdemeanor for which he was placed on probation. It is the anomaly that a probationer is deemed to be of such a low risk that he/she is terminated early from probation but that is exactly what happened to Mr. Vandervoort. What was originally supposed to be a 3 year term of probation lasted merely half of that time based upon Mr. Vandervoort's successful early termination. It should be noted that Mr. Vandervoort's 2008 arrest for Aggravated Harassment and listed in Paragraph 51 of the PSR stemmed from a custody dispute with the mother of his son in which Mr. Vandervoort was ultimately granted full custody. The misdemeanor charge was ultimately dismissed.

10.    Mr. Vandervoort's role as a father is unquestionably the most critical relationship that he has. It is unique simply from the standpoint that Mr. Vandervoort had a son at the tender age of 17 and had sole custody of his son by age 22. The loyalty, support, and importance of both are evident in the letters written by both Vandervoort men. Sadly, the relationship is also unique from the standpoint of his son's drug addiction. Unquestionably, Mr. Vandervoort has been Josh's biggest advocate and support system in his recovery from drugs. Under the most trying of circumstances Joshua Vandervoort has <u>always</u> been there for his son and it is clear that his son suffers without the support of his father. Being a parent is hard work even under the best of circumstances but one can only imagine the difficulty of being a single

parent that has to constantly be vigilant and keep an eye out for the constant threat that is a drug addiction. It is safe to say that Tyler Vandervoort would never have found any level of sobriety without the fierce advocacy of his father.

11.    Mr. Vandervoort role as a grandson also provides insight into the unique type of person that he is. He has two elderly maternal grandparents for whom he is their sole and exclusive care provider. The often thankless duties of caring for the elderly that usually fall to the child of an elderly parent instead fall to the grandchild here because of Mr. Vandervoort's mother's early death. Despite working full-time and doing the aforementioned for his son, Mr. Vandervoort provides for his grandparents in a way that I would suggest is atypical of men in their 30's. The quality of life that he provides for them is clearly evidenced in their letters as well as that from their doctor.

12.    Mr. Vandervoort's viewing of pornography was entirely out of character. His actions were not consistent with his personality or the life he has led. Mr. Vandervoort has always been a good father and admirable grandson. He has always maintained steady employment and has advanced in the types of jobs he has held over the course of his life. The act for which he stands before the Court is one that is selfish but was committed by a man that has led a life that has been selfless.

13.    Mr. Vandervoort voluntarily obtained an evaluation from Carl Christensen that was uniquely positive and did not recommend treatment. Mr. Vandervoort would have agreed to participate in any treatment had it been recommended.

14.    Mr. Vandervoort has already begun to feel the punishment for his crime.

15.    Mr. Vandervoort will continue to be punished for his actions, whether he is incarcerated or not.  He will have to register as a Sex Offender which brings its own host of limitations and consequences.

16.    The history and characteristics of this defendant suggest a downward departure is appropriate.

<u>Seriousness of the Offense</u>

17.    The offense Mr. Vandervoort has pled guilty to is unquestionably serious.   Mr. Vandervoort acknowledges this and recognizes that he invaded the privacy of several hundred young children for his benefit.   However, the defense does object to any sort of unreasonable seriousness being attached to this case based upon the premise that defendants that engage in possession of child pornography are actual physical/sexual abusers of children.  Further, the defense objects to additional seriousness being considered for the additional demand created for child pornography due to this charge.

18.    It is a common misconception that those who possess child pornography sexually abuse children. Virtually every sentencing enhancement passed by Congress under 2G2 have been based upon that idea.   See 137 Cong. Rec. S10323 (in support of directing increase to base offense level 1, 141 Long. Rc. S5509 (in support of directing additional increase in base offense level from 13 to 15); 144 Cong. Rec. S12262 (in support of directing expanded reach of "distribution" enhancement). Recently, courts have recognized via scientific data and common sense that this is not the case. For example, in <u>United States v. Marshall</u>, 870 F. Supp. 2d 489, 491-92 (N.D. Ohio 2012), the court rejected the presumption that "those who view child pornography are indistinguishable from those who actually abuse children," finding instead that the "[e]mpirical data strongly suggests that viewing child pornography does not equate to child molestation."  Similarly, the Court in <u>United States v. Phinney</u>, 599 F. Supp. 2d 1037, 1045 n.10 (E.D. Wis. 2009) cautioned "Courts should not assume that a defendant has or will commit additional crimes without a reliable basis." These decisions are consistent with the finding of the Child Pornography Sentencing Commission report, which indicates that even large quantity of child pornography does not indicate a likelihood of sexually abusing children.  <u>Child Porn Report</u> at 204.

<u>To Afford Adequate Deterrence to Criminal Conduct</u>

19.    In this case, a sentence of probation and all that comes with it, is serious enough that it will serve as a deterrent from future criminal activity. The Proposed Special Conditions on pages 16-18 related to sex offenses are strict and broad. They impact significant aspects of life such as where a person can go, with whom they may interact, and they greatly impact the ability to utilize technology which is crucial in the modern world.   This is not to suggest that any of this is unfair or inappropriate.  Rather, it is to illustrate that probation would not be a light or easy sentence.  Above and beyond strict terms of probation is the inevitability of sex offender registration which is massive deterrent to criminal conduct.

### To Protect the Public From Further Crimes by the Defendant

20.    Mr. Vandervoort's actions since the execution of the search warrant at his home in March by show that he is a low risk to reoffend.  His actions show that he is a good man that made a mistake and was willing to take responsibility for said mistake.   He was cooperative with the FBI when they arrived at his home.  He retained counsel.  He continued working at the same job he has held for 8 years.   He continued to provide for his son and assist him in his recovery from drugs. He continued to assist his elderly grandparents. Simply, he continued to be the good person he was prior to FBI's arrival at his home. He obtained an evaluation from Carl Christensen who provided a uniquely positive report that assessed his risk to re-offend at less than 97% of "similar offenders."

21.    It can reasonably be inferred that the Government's actions in this case indicate that the public need not be protected from further crimes by the Defendant.  The Government's willingness to allow Mr. Vandervoort to remain uncharged and at liberty from May 2021 until his plea in mid-September is admirable. The only logical conclusion that can be drawn from the fact that they had the ability to charge, arrest, and bring Mr. Vandervoort to court in early May 2021 but did not is that they felt he did not pose a risk to the community at large. Clearly, they felt comfortable that Mr. Vandervoort would live a productive and law-abiding life for many months without oversight and that is precisely what he did.

### Needed Training

22.    Mr. Vandervoort does not appear to need any job or other professional training. However, he will unquestionably be mandated to participate in a sex-offense specific program and the best treatment is available out of custody.

### Conclusion

23.    Joshua Vandervoort will live with the punishment of his crime for the rest of his life which has been irrevocably changed forever.  The Second Circuit has continuously stated that District Judges are encouraged to take seriously the broad discretion they have in 2G2.2 cases.  It is well established that 2G2.2 is unique in its history and can generate unreasonable results.  I believe that Mr. Vandervoort has fully accepted responsibility for his crime, does not pose a threat to the community, poses a low risk to re-offend, and should receive a sentence outside the guidelines range. As stated by Probation in Paragraph 85, "The Court may wish to consider the defendant's steady employment, medical conditions, limited criminal history when determining an appropriate sentence and unwarranted sentencing disparities among similarly situated defendants." For all of the above reasons, we ask the Court to sentence Mr. Vandervoort to a term of probation with as restrictive conditions as the Court deems necessary. Based upon his prior term of probation being successfully terminated early the Court should have the confidence that Mr. Vandervoort will perform not just well, but exceptionally, while on probation. Such a sentence will permit Mr. Vandervoort to continue to be a productive member of society. Perhaps, most significantly, it will permit him to continue to be a highly valued and vital family member that is present to his son and grandparents.  Unquestionably, their lives will be markedly better with Mr. Vandervoort on probation as opposed to being incarcerated.

Dated: December 1, 2021
        Rochester, NY

Respectfully Submitted,

Brian DeCarolis, Esq.
1507 Monroe Ave.
Rochester, NY 14618
(585) 697-3482

# EXHIBIT A

To the honorable Judge Charles Siragusa,

  I am writing you this letter to express the regret and remorse I feel for the horrendous crime I have committed, and also to give you some insight into the type of person I am and the life I have lived.

  The crime I have committed paints an extremely bad picture of me, but I won't let it define who I am and I know with enough effort I will overcome all of this. I understand that this crime is at the top of the list of some of the worst crimes someone can commit and I could never express enough the shame I feel for it. I understand there is no undoing what I have done but there is the ability for me to make amends and show my willingness to fix these behaviors by any means necessary. I know I am better than what I have done and I am saddened that I have allowed myself to commit something so sinister and cause so much pain to so many people. There are so many victims in all of this and I am not one of them.

  Since the age of 17 when my son was born I have always strived to be the best example I could be for my son, and I feel like I have done a good job of that, until now. My son has always been my world and at 21 years old I found myself winning full custody of him after a lengthy court battle. Soon after the courts decision his mother left for Colorado, not to be heard from again until he was around 17.

Being a single dad at such a young age was tough, and we struggled at times, but I was determined to do the best I could for him. I had always held down a long term job to support the two of us but there became a point in time where I wanted more than just a paycheck, I wanted a career and something to show my son the possibilities out there if you work hard and dedicate yourself. At 30 years old I found myself working nights and attending college during the day inorder to obtain a degree in Natural Resource Conservation, my true passion. Not long after, I found myself climbing the ladder with the United States Dept of Agriculture (USDA) and after 8 years of hard work I had become a highly respected Plant Protection and Quarantine Officer / Plant Health Safegaurding Specialist helping to eradicate invasive insects and plant diseases. I have a tremendous amount of pride in the work I do and what I have been able to achieve. Being able to do something to help my community has always been something important to me. I find it very satisfying helping others and as a young man I would frequently help out at soup kitchens and with environmental cleanups put together by local conservation groups. As my son got old enough we found enjoyment in doing these sorts of things together.

   Shortly after joining the USDA my mother passed away leaving a huge void in the family. This was the only mother my son had ever known and the only child for my grandparents. After her death my son started to act out and within a few years he found himself addicted to opiates. Dealing with a loved one in addiction is

extremely difficult but I vowed never to give up on him. I found myself seeking help from numerous professionals and countless trips around the state to get him the help he needed. One day after coming home from work I found myself administering Narcan and performing CPR in an attempt to save my sons life after suffering an overdose. After reviving him my son was rushed to the hospital by ambulance and I spent the next 8 days there, never leaving his side. My son was suffering from kidney and liver failure, lung issues and also severe neuropathy that left him unable to walk for weeks and lingering effects still till this day. Since his overdose my son enjoyed a few years of sobriety but soon after my arrest, and loss of our home of over 13 years, he has sought comfort in heroin once again. Thankfully he has recognized the need to seek treatment once again and has checked himself into an inpatient program. I can't help but feel guilty and that his relapse is my fault. Without me around he has no support system to rely on when he feels the need to use. I fear I may never get to see my son again and that he will die an addict on the streets, all because of my selfish decission. I'm not sure how I'd live with myself if that were the case.

Besides letting my son down I have also failed my grandparents in a major way. Since the death of my mother, and being thier only family left to help, I have been tasked with the care of my grandparents, Robert who is 94 and Nan at the age of 91. I have always taken this responsibility very seriously and for years now I have been the sole caregiver, taking care of everything from driving them to doctors appointments and

grocery shopping to taking care of the home they have shared for over 60 years. I have never been close with my father or his side of the family, Robert and Nan are the only family I have really ever known. They were always there for my son and I, and I find it an honor to be able to be there for them in thier time of need, unfortunetly I have thrown all of that away as well. My grandparents have been good people all of thier lives and don't deserve what I have done to them, essentially abandoning them because of my reckless choices.

My family aren't the only victims in all of this, there are also the children depicted in those photos and the countless others out there suffering from this abuse. Sitting in my cell for hours on end I find it hard not to reflect on that and it sickens me to think that I made the choice to add to thier pain. I find it extremely hard to ever look at myself in the mirror lately, and even harder to find any sort of light in this situation besides the fact that I still have the chance to make this all right again.

Your honor, I am not an evil person but I have made a seriously bad choice in my thinking and behavior that the effects of will be felt by many people for years to come. With the help of proffessionals and the support of my loved ones I will make amends for my actions and once again become a productive member of society. When deciding my fate please take into consideration the good I have done and what I still have to offer with what life I have left.

Respectively Yours,
Joshua J Vandervoort

# EXHIBIT B

To Honorable Judge Siragusa,

My name is Tyler Vandervoort. I am the only child of Joshua Vandervoort. My dad had me at 16, we've been inseparable. Him having me at a young age didn't stop him from being the best dad, friend and the person I look up to. My father fought for custody and won when I was 5. My mother was never around when I was growing up, she left the state when I was 6. My mother is an addict. So it has always just been my dad and myself. He has taught me everything in life to be a good person. My dad has given me the best life. He attended every school function, games, snow boarding competitions. My favorite times with my dad have been our fishing trips, snow boarding trips and vacations. I always know I can count on him.

I have struggled with addiction since 15. Losing my grandmother to cancer was extremely hard on me. It changed my life. It has not been an easy road whatsoever but my dad has never turned his back on me. Anything from running to my side when ever I need him. To driving me to countless rehab centers. In 2019 my dad saved my life. I am forever thankful to him. I overdosed. He came home from work to find me unconscious. I later found out he issued the narcon that saved me. I was in the hospital for 8 days and my dad never left my side. The doctors didn't know if I'd walk again. My dad has never give up on me even when I gave up on myself. From the overdose I suffer from neuropathy, lung issues, kidney failure and low liver enzymes.

I had a good amount of sobriety before this situation began, but unfortunately I relapsed due to all the stress and depression at the thought of losing him. Without him I am lost. I don't even know what to do. He is the only person I have to help me. Without my father I will be homeless, Due to my dad going to jail he had to give up the home I've grown up in. He has supported me financially and emotionally my whole life.

Not only does my father look out for me. I can remember a number of times helping others he didn't even know. The most recent, we were at home when we heard a horrible crash on the corner. My dad ran outside to help. He yelled for me to call 911. The elderly lady panicked after crash. She got out of car but she left her car in drive with the doors locked and her dog stuck in the car. My dad instructed for me to bring bricks to stack under tire as he held the car from driving away until the cops and firetruck showed up. He's always been my hero, but sometimes he shows others that he's their hero as well.

I am fully aware of the charges that my father has plead guilty to and the severity of them but I am requesting leniency due to my father being the only person in my life. The only person who has been able to help throughout my addiction. I am not sure I will survive with out him.

Tyler Vandervoort

## Mental Health Transport 22.09                    TYLER VANDERVOORT

| ID | Created At / By | | Status | Last Faxed/Emailed |
|---|---|---|---|---|
| 17157 | 12/9/19 07:24PM / stephanie militello | | complete | 12/9/19 07:24PM |

### Incident/Response Information

| Type | Incident Date/Time | Reported Date/Time | CR# | Beat# | Section/Zone |
|---|---|---|---|---|---|
| 22.09 | 12/9/19 18:53 | 12/9/19 18:53 | 19073140 | 1 | 3 |

| Dispatched To | Location |
|---|---|
| 131 English Rd, Greece 14616 | 131 English Rd, Greece 14616 |

| Agency | Reporting Officer | ID/IBM# | Car# | Assisting Unit(s) | CIT Trained |
|---|---|---|---|---|---|
| GRE | stephanie militello (5858659200) | 1377 | 813 | 810,812 | YES |

### Persons Involved

| Person 1: Name (Sex Race DOB) | Address | Phone (Day) | Phone (Eve.) |
|---|---|---|---|
| P TYLER VANDERVOORT (M W 11/15/99) | 131 English Rd, Greece 14616 | 7163275062 | |

| Person 2: Name (Sex Race DOB) | Address | Phone (Day) | Phone (Eve.) |
|---|---|---|---|
| R JOSHUA VANDERVOORT (M W 8/17/82) | 131 English Rd, Greece 14616 | 7163275062 | |

P: Patient, R: Reporting Person

### Patient Information

| Hospital | Physical Injuries | Tech Work |
|---|---|---|
| Strong | - | NO |

Contact police on release?  NO

History of assault/violent behavior?  **Unknown**        Requires physical restraint?  **YES**

Behaviors/actions indicating person is danger to self/others
**Unable to care for self**

Record of military service?  NO

| Language Limitation | Known Diagnosis |
|---|---|
| | DEPRESSION |

### Narrative

R, WHO IS THE FATHER OF P, CAME TO THE LOCATION TO CHECK ON P. R HEARD GURGLING FROM THE ROOM AND LOCATED P FACE DOWN, UNCONSCIOUS. R GAVE P SEVERAL DOSES OF NARCAN AND CALLED 911. PATROL ARRIVED ON SCENE AND P WAS GIVEN TWO MORE DOSES OF NARCAN. P REGAINED CONSCIOUSNESS. P JUST GOT OUT OF REHAB 12 DAYS AGO FOR FENTANYL USE AND HAS NOT BEEN USING SINCE. P NORMALLY SMOKES SAID FENTANYL. P STATED HE DID NOT REMEMBER WHEN HE SMOKED OR HOW MUCH HE SMOKED. P WAS TRANSPORTED TO STRONG.

_____                    _Sgt. Ritter_____ LB 13-18_
Reporting Deputy/Officer Signature                    Supervisor Signature

GOV000011

Your Honor,

I want to tell you about our grand-son, Joshua J. Vandervoort. He is the son of our late daughter, our only child, our only family here.

After his mother's death, Josh has faithfully helped us in so many ways almost daily. As we are now 91 and 94 yrs old we cannot do many of the small but important things that a home requires. He has made it possible for us to stay in our home for 60 yrs.

Since we are living totally on our Social Security benefits, we cannot afford hiring some-one making us entirely dependent on Josh who willingly comes over on a moments notice as well as frequently checking on our welfare.

We can only hope for understanding. We love him dearly and know he loves us.

Sincerely

Nanette & Robert Keller
118 Ridgeview Dr.
East Rochester, N.Y 14445
585-586-2636

119 Ridgeview Drive
East Rochester, New York 14445


Your Honor:

I am writing this as the concerned grandmother of Joshua Vandervoort. I was in the delivery room when he was born and have been there for and with him ever since.

He was having a difficult time in his middle teen years when became a father at age 17. At that time he turned his life around to focus on what was best for his son Tyler. He got his GED, enrolled in the Finger Lakes Community College and supported himself and Tyler by working nights as a security guard at Water Street Grill in Rochester. This was accomplished with the help of our daughter (his Mother) who had Tyler sleep at her home at night until Josh could pick him up and take him to his home for the rest of the night.

After a time, he was hired by the Dept. of Agriculture and has been a respected employee since then doing field work, hiring, leading the summer help and instructing classes in ATMs, UTVs, etc.

Always, his son has come first in his life and he has done all he could to see he was well cared for especially after gaining full custody. He and Tyler have continued to live at the home they had until these recent problems.

Of course it is my hope that Josh can continue to be there for Tyler and us.

Very truly yours,

Nanette N. Keller

Nanette N. Keller

HIGHLAND HOSPITAL

**Geriatrics and Medicine Associates**
Part of Highland Hospital



10/28/2021

To the Honorable Judge,

I am writing at the request of my patients, Robert and Nan Keller, whose grandson, Mr. Josh Vandervoort is soon to be sentenced (or perhaps placed on probation). Mr. Vandervoort has been an important source of support to this couple in so far as helping them to maintain their home, address maintenance and repairs of the home, assist with their needs in maintaining their independence.

If their grandson, Mr. Vandervoort is incarcerated, they will not be able to remain in their home; as an elderly and frail couple, they will be unable to manage the day-to-day and week-to-week responsibilities of home ownership. This would also be a financial hardship on the couple as they live on Social Security, and the services their grandson provides would be a financial burden to them to pay an outside company to do.

Mr. Vandervoort has been a reliable and indispensable person in their lives. They have no immediate alternative living situation and no other support, as their only daughter (only child) - Josh's mother died prematurely of a terminal disease.

In short, this letter is to request leniency if appropriate in Mr. Vandervoort's sentencing, so that he can remain a source of needed assistance to the Kellers.

With respect, and appreciation for this consideration,

Kathryn Markakis, MD
Lic# 167570

To: Honorable Judge Siragusa,

I met Joshua Vandervoort a year and a half ago. My sister, Sarah and brother in law, Greg went to high school with him. Greg also played baseball with Josh. Vouching for Josh saying he was a great guy, they gave him my number. We hit it off immediately. Our first date we spent over 8 hours talking, walking, enjoying the outdoors, watching the sunset and eating pizza. He stole my heart with his humor, caring, attentiveness, his dedication to his job and most of all his love for his grandparents and son. He is the hardest working person I have ever met. Willing to do anything for his loved ones. He is the first boyfriend my parents not only like but love.

Being a young single parent myself of a now 20 year old. Our backgrounds were similar raising our children on our own, graduating from college later in life. Hearing all of his struggles, obstacles and still pulling himself up to better himself and their future. Also, being a great rolemodel to his son showing him dedication and hard work pays off. He graduated from college and landed the job of his dreams with the USDA, 10 years ago.

His son, Tyler is 21 and suffers from addiction since around the age of 16. He depends on his dad daily for sobriety. When they aren't together they speak on the phone for every little or major thing throughout the day. He is his father, best friend and counselor. Since Josh and I have been together there's been a few times where Tyler felt depressed and felt like using and reached out to his dad. Each time Josh had stopped what he was doing and rushed to his son's side.  Since this incident his son relapsed. He has gone into 3 rehab centers since September and has been kicked out or he left on his own accord. I've been trying to help guide him and push him to do the right thing. It's not the same. Tyler's mother has never been around, being an addict herself. I feel like he feels his world is crumbling. He doesn't have a home any more, he feels like he lost his world and only support.

Up to the day of sentencing Josh was more concerned about us, his family.  He wanted to make sure he finished building the perfect deck/backyard for me. He booked a night stay for us and his grandparents to celebrate  grandmother's 91st birthday and honoring his grandfather as a veteran, whose honor flight was canceled yet again due to covid the week prior. Josh and his grandfather were looking forward to going together. His grandfather is 95 and may never be able to go. He wanted to show them how important they are to him. Josh wrote out every important detail in a notebook to help his son with everything from passwords, important phone numbers and ways to survive.

Anyone who meets him,  thinks he's a great guy. He's selfless, loyal, mannered, educated, a value to society. The other day I picked up Tyler, his son for dinner. I made a stop for gas. Before I could even shut the car off Tyler asked "do you want me to pump your gas?" I smiled and said "your dad has raised you well. That's why I'm with him." The importance of manners is huge to me especially in this society where many lack the simplest gestures.

I'm requesting leniency of the court. In consideration for the person he is and not the mistake that was made. His son and his grandparents need him. His mother was an only child that passed away 7 years ago from cancer and his grandparents are on their own at 95, 91 in their home. Josh has been the only reason they have been able to stay in their home. They depend on Josh for everything from taking care of the house to doctor appointments. His son, his only child needs his dad to get him back to sobriety and help maintain it.

Sincerely,
Debra Salamone

William Perez, Ph.D.
357 East 201st Street, 6A
Bronx, New York 10458
(914) 843-2861
wmperez07@gmail.com

14 November 2021

The Honorable Charles J. Siragusa
United States District Judge
100 State Street, Room 127
Rochester, New York 14614

Re: Mr. Joshua J. Vandervoort

Dear Judge Siragusa

I am a Supervisory Officer at the United States Department of Agriculture and writing to provide a character reference for Mr. Joshua Vandervoort. I have known Josh for more than four years: first, as a colleague under my supervision and, later, as a friend.

I met Josh in May 2017 during my service as a subject matter expert to an emergency response team established to combat a newly-discovered agricultural pest, the European cherry fruit fly. Josh had been hired as a seasonal employee under my supervision. He had also been working for the department during the previous five years as a seasonal employee, and it was his sole work that laid the foundations for the creation of the response program. I did not like him on first impression. What could ostensibly be considered desirable traits in an employee, such as his sociability and focus, I took to be ingratiating. After only a few days, I realized that I was being cynical. In fact, Josh was a very friendly and helpful person who impressed everyone with his professional and reliable work ethic. I decided that the best supervisory approach was to stand back and simply guide him. I immediately realized he was someone whose professional growth I would be proud to nurture and support. I expressed to my colleagues that if there were any kind of person I would be more than happy to professionally mentor, that it would be someone like Josh. And so, I decided to guide him to the best of my ability and experience in hope that he would flourish and advance in his career.

Josh demonstrated respect and generosity for his friends and colleagues. He put others above what most other management staff would do for their employees. He continually found ways to offer them training so they could acquire the skills he possessed and provided leadership opportunities to his teammates so that they, too, could grow personally and professionally. Eventually, he was hired as a Technician and promoted to Officer. During this time, he oversaw a team of up to 22 seasonal employees who became loyal to him and returned year after year to work for him

while others would clamor to be part of his team.  His team was foundational to the program and his work extended far beyond his official duties and responsibilities.  He was undoubtedly poised to reach upper management levels.  In my opinion, good leadership is part of his natural character.  I admired and supported these qualities in him.

Over time, I got to know more about his personal life.  I learned that he was the sole supporter of his grandparents and his son, and I was struck by his devotion to them, especially his son who was struggling as a young man.  I met his son and saw the same warm and generous traits in him that I saw in Josh.  As I got to know them, our professional relationship warmed into a friendship, especially after my temporary term in the program came to an end.  I was no longer his supervisor but his trustworthy mentor.  In turn, I also began to look to him for guidance.  His natural leadership abilities and his unselfishness were very valuable to me.  Like friends can do, he saw things in me that I didn't see in myself and, in turn, I did the same for him.  There are very few people that I allow into my close and personal sphere; Josh is one of the few.  I value his friendship deeply and am very proud to call him my friend.

That is why the charges that have been brought against him distress me greatly.  It is heartbreaking  During the years I have known Josh, I have found him to be a beautiful person, someone that I could trust, guide, and  a friend who respected, valued, and guided me to be the best that I can be.  In short, I feel privileged to have Josh in my life.  I will always consider him a very special person.  However, the gravity of his actions has shaken my senses.  I feel lost and do not know what to say or do.  All I can do is reflect on the upstanding history that developed into a meaningful friendship with Josh and simply describe the person that I know outside of this situation.  I sincerely believe my friend, Joshua Vandervoort, is an otherwise honorable person who will do whatever is necessary to rehabilitate and rebuild his life and honor his relationships with family and friends.

Sincerely,

William Pérez

November 9, 2021

To whom it may concern,

I'm writing this letter to express my support for Joshua Vandervoort. I've known Josh since 2014 when we were first introduced while working as employees of the US Department of Agriculture. As we got to know each other, we realized we had a similar interest in the outdoors and became friends. Since then I have gotten to know him well as a friend and as a colleague. As a friend, I know him to be caring, dependable and always willing to help, whether giving good advice when asked or lending a hand with a project. As a colleague I have worked closely with Josh training new employees, dealing with personnel issues and conducting inspections, among many other tasks asked of us. He has always been a professional first and I can say that he has contributed greatly to the protection of American agriculture. I think you should also know Josh truly cares for his family. He's been a single Dad since he was in his twenties, working hard to make a good life for his son. He regularly checks in on and does projects for his elderly grandparents and takes them to appointments sometimes.

I don't know the full extent of the crimes he's being charged with, but I know they're serious. I just ask as you consider his sentence to know that Josh is not a two-dimensional character. He is a good friend, a caring father, and a hard-working public servant. I believe that he still has much to offer and will make good on whatever debt he has to repay to society.

Sincerely,

Stephen Schilling

EXHIBIT C

North C...

www.northcoastcounseling...

277 Alexander, Suite 306    585-262-4303
Rochester, New York 14607    fax: 585-262-4363

June 14, 2021

Brian DeCarolis, Esq.
1507 Monroe Avenue
Rochester, NY 14618

RE:    JOSH VANDERVOOT
       DOB:

Dear Mr. DeCarolis:

I am writing to summarize my evaluation of Josh Vandervoot and to make recommendations for his continued care. This evaluation was requested by him, I believe at your direction, after having been investigated for having child pornography on his computer. This evaluation started as a result of his having role playing activities on-line with other women and apparently one of them may have been underage or at least pretending to be underage. He acknowledges that he has had some ongoing interest in this kind of virtual sexual activity for a number of years, but it has not occupied a great deal of his time or created other social difficulties. He denies trying to contact individuals, only engaging in virtual relationships. The evaluation involved three clinical interviews with Josh and administration of the Sexual Adjustment Inventory and the Affinity Assessment of Sexual Interest. I did not have any third-party information regarding the nature of the material that he had in his possession.

Josh is a 38 year old plant protection specialist for the United States Department of Agriculture. He was born and raised in the Seabreeze area and at age 16 dropped out of school, but later obtained his GED. Much later, he went to college to get some training in biology and forestry. Prior to that he worked in concert security for a number of years at amusement parks and concert venues. He went back to school at age 30 for natural resource conservation and is very much interested in his current career.

Josh's sexual history is unremarkable for any indications of deviance development. His earliest sexual experience was at age 16 with what turned out to be the mother of his son. His son is now 21. He presents as a very caring and empathetic individual, but does report some periods of higher anxiety and nervousness. He has had a steady girlfriend for approximately a year and believes that this may be a permanent relationship. He reports seven sexual partners over the course of his lifetime; two of which were long-term relationships and five were more casual.

1 Vandervoot

## TESTING

The Affinity Assessment of Sexual Interest ® is a standardized test that explores the sexual interests of individuals by having them view slides of models (adults & children) and rate how sexually attractive or unattractive they find each image. It also collects two objective measures of sexual interest that are outside of the awareness of the subject regarding their sexual interest.  His objective and self report profile suggest he is attracted to adult females.  One objective measure showed significant attraction to adolescent females.  This is considered a normal profile for adult males.

The Sexual Adjustment Inventory is a paper and pencil self-report standardized test which explores relevant psychological factors that influence risk. Scales include Truthfulness for Test items and Sex items; Sex Items Scales for Sexual Adjustment, Child Molesting, Sexual Assault and Exhibitionism and Non-Sex Item Scales for Violence, Antisocial Attitudes, Distress, Impulsiveness, Alcohol and Drug Abuse. His Truthfulness Scales were within acceptable limits and he answers are valid.  He showed no elevations on the Sexual Items Scales and only a moderate elevation on the Antisocial Scale.  This suggests he is an untroubled person sexually and psychological.

## RISK

The actuarial risk instruments for **non-contact offenders** (pornography, exhibitionism, unlawful surveillance) are assessed using the STABLE 2007, Child Pornography Offender Risk Tool (CPORT) and Correlates of Admitted Sexual Interest in Children (CASIC).  The scores are combined and reported as 5 catagories of risk.

*The three principles of the R-N-R Model are:*

*1. Risk Principle: match the level of service to the offender's risk to re-offend.*

*2. Need Principle:  Assess criminogenic/sexual deviance needs and target them in treatment. Assess general mental health needs and goals/targets for treatment.  Identify strengths and resource available.*

*3. Responsivity Principle:  Maximize the offender's ability to learn from intervention by tailoring the interventions to the learning style, motivation, abilities and strengths of the offender. (Public Safety Canada, 2007-06).*

*Risk*: This **non-contact** client was scored for his pornography use.  He scored __1_ on the STABLE 2007 and _1___ on the  CPORT.

This places him in CATEGORY ___1___.

2 Vandervoot

Visual Sexual Behavior Risk Chart*

Client: Joshua Vandervoort

Date of Rating: 11 June 2021

### Risk Categories

| Descriptors Risk-Needs | Prosocial Made a mistake | Minor Concerns | Typical Problems | Chronic rule violations, few strengths. | 3 & 5 year reoffense |
|---|---|---|---|---|---|
| Risk Categories | 1 Very Low | 2 Low | 3 Low-Moderate | 4 Moderate – High | 5 High – Very High |



The client's estimated Risk of Recidivism for 3 years is _3%_ & 5 years _5%_.

Distribution of Offenders with this risk in relation to all sex offenders.

  3% Below    97 % Above  

% Offenders with lower risk:          % Offenders with higher risk:

Note: Recidivism estimates halve each 5 years in the community without offending.

3 Vandervoot

*Based on R. Karl Hanson (2017) 45,398 clients rated in 118 samples from 16 countries in 536 studies.   Public Safety Canada

Sexual Behavior Risk Assessment Bibliography

2019

C. Christensen, LCSW-R

These are the principal sources of the research used in computing the sexual behavior risk of re-offense estimates as they change with the passage of time using the Canadian Five Level Risk Estimate.

Helmus, L. Maaike & Brankley, Andrew (2017).  Sex Offender Risk Assessment with STABLE-2007: Overview of new norms and new combination rules.  Presentation at the Annual Conference of the New Zealand Psychological Association, August 2017, Christchurch, New Zealand.  Available from Lmaaikehelmus@gmail.com.

Hanson, R. Karl, et al (2017). A Five-Level Risk and Needs System: Maximizing Assessment Results in Corrections Through the Development of a Common Language.  (New York: The Council of State Governments Justice Center, 2017).

Hanson, R. Karl (2017).  Revising Risk Assessments: Dynamic Risk Factors and Years Offense Free. Presentation at Association for the Treatment of Sexual Abuse 36th Annual Research and Treatment Conference, October 25, 2017, Kansas City, Missouri.

Hanson, R. K., Harris, A.J.R., Helmus, L., & Thornton, D. (2014) High risk sex offenders may not be high risk forever.  Journal of Intrerpersonal Violence, 29, 2792-2813. doi:10.1177/0886260514526062.

Hanson, R. K., Harris, A. J. R., Letourneau, E., Helmus, L. M., & Thornton, D. (2018). Reductions in risk based on time offense-free in the community: Once a

4 Vandervoot

sexual offender, not always a sexual offender. *Psychology, Public Policy, and Law,
24(1), 48–63.* https://doi.org/10.1037/law0000135.

**NEED**

The testing and interviewing did not review any particular criminogenic or sexually deviant needs that should be addressed in treatment. Overall, he presents as a reasonably well adjusted individual who has little risk for offending or re-offending.

**RESPONSIVITY**

Josh presents as a very earnest and motivated individual who has really discovered his calling in life through the Department of Agriculture and would like to continue his career. He was cooperative throughout the evaluation and seemed quite responsive to any suggestions for things that he could change that would make life better.

Thank you for this referral.

Sincerely,

Carl W. Christensen, LCSW-R

c:      Josh Vandervoot
        131 English Road
        Rochester, NY 14616

5 Vandervoot

# EXHIBIT D

 

**LIVINGSTON COUNTY SHERIFF**

THOMAS J. DOUGHERTY, SHERIFF

MATTHEW D. BEAN, UNDERSHERIFF

November 24, 2021

Dear Honorable,

I'm writing to inform you on the participation we have had from Vandervoort, Joshua (DOB: 08/17/1982). Mr. Vandervoort has successfully completed our Cognitive Behavioral Intervention class, Interactive Journaling.  Mr. Vandervoort was a very active participant and he completed each journal sharing based on his experiences, thoughts, and beliefs.  He put careful thought into every response. His motivation to change his life for the better is evident in his journals and he has great insight into how to make positive changes going forward.

*Mr. Vandervoort received his certificate of completion on November 22, 2021.*

Joshua was a pleasure to work with.

Thank you,

Kelsey L. Duell, BSW
Transitional Jail Coordinator

*PROUDLY SERVING LIVINGSTON COUNTY SINCE 1821.*

4 COURT STREET * GENESEO, NEW YORK 14454
GENERAL NON-EMERGENCY (585) 243-7100
FAX (585) 243-7104



# CONGRATULATIONS!

**Catholic Charities**
Steuben/Livingston

*Joshua Vandervoort*

You have successfully completed

The cognitive behavioral intervention program

## Interactive Journaling

Completion Date: November 22, 2021

Location: Livingston County Jail, Geneseo NY

Instructors: Kelsey Duell, BSW

Participant Signature: _____

Instructor Signature: Kelsey Duell, BSW